IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

RENEE DOMINGUEZ, Administrator of the
Estate of Enrique Dominguez,

        Plaintiff,

v.                                                                                Case No. 20-317-JWB

SCOTT CROW and
MIKE CARPENTER,

        Defendants.

**MEMORANDUM AND ORDER**

This case involves the suicide of Enrique Dominguez while he was incarcerated at the Oklahoma State Penitentiary ("OSP"). Plaintiff Renee Dominguez, as the administrator of Enrique's estate, brought a claim under 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to Enrique's serious medical needs resulting in his death. This matter is now before the court on Defendants' motion for summary judgment. (Doc. 37.) The motion has been fully briefed and is ripe for decision. (Docs. 38, 45, 48, 49.) The motion is GRANTED for the reasons stated herein.

**I.    Facts and Procedural History**

The following facts are uncontroverted or viewed in a light most favorable to the nonmoving party. Defendant Scott Crow is the Oklahoma Department of Corrections ("DOC") Executive Director since June 2019. Defendant Mike Carpenter is currently DOC's Chief of Operations and was the warden of OSP from July 2018 to July 2019. The DOC has policies on suicide prevention and every facility has their own written suicide prevention plan.

1

According to the policy, inmates can be placed on suicide watch for attempting suicide, making suicidal gestures or threats, or engaging in self-harm. (Doc. 37-2.) The on-call Qualified Mental Health Professional ("QMHP") will be contacted immediately after staff initiates a suicide watch. (Doc. 37-1 at 6-7.) After evaluation, the QMHP determines if the inmate should be observed in a safe cell or regular housing and the level of supervision needed. Correctional officers perform the suicide watch observations and log entries. The QMHP schedules at least two daily in-person interviews. The QMHP determines which level of the three levels of suicide watch an inmate will be placed. (Doc. 37-1 at 6-10.)

If an inmate attempts suicide, first responders are called for help and initiate life-saving measures. The facility's Mental Health Administrator ("MHA") and facility head or officer on duty are notified. When an event is deemed an attempted suicide, the MHA will notify the Chief Mental Health Officer ("CMHO") verbally. Afterward, the facility or unit head is responsible for reporting the potential suicide up the chain of command. (Docs. 37-1 at 10-12; 37-3.) The CMHO is responsible for compliance with the procedure, annual review, and revisions. (Doc. 37-1 at 14.)

On February 7, 2018, Enrique was placed on suicide watch after he harmed himself with sharpened wire while exhibiting "bizarre" behavior. Enrique stated that he had harmed himself because he was having issues with his cellmate, his sister died, there was a "hit" on him, and he feared for his family's safety. (Doc. 38-1 at 4.) According to the record, Enrique also reported to mental health staff he possibly took something which affected him. Because of his bizarre behavior, staff believed that he may have been under the influence of bath salts or a similar drug. (*Id.*) On June 22, 2018, Enrique was returned to his unit.

On November 21, 2018, the QMHP met with Enrique who told the QMHP that he was okay and did not have any mental health concerns. (Doc. 38-2 at 3.) On November 27, behavioral

health clinician Bruce White met with Enrique and reported that he appeared focused and fully oriented with thought processes intact and stable. Enrique told White that he was doing good and had no mental health issues to discuss. (*Id.* at 2.) On November 28, Enrique was seen by medical staff with a complaint of multiple superficial lacerations from his left elbow to his wrist. (Doc. 38-1 at 2.) Enrique denied self-harm and reported that he cut his arm on metal wires when he was putting his dinner tray on a table. Medical staff notified the QMHP, Psychological Clinician Steven Long, who evaluated Enrique in the emergency room. According to the report, Enrique told Long that he cut his arm on the "bean hole"[1] when he went to return his tray. (Doc. 38-2 at 1.) Enrique was clenching his jaw and Long questioned him. Enrique disclosed that he believed that his wife planned to divorce him after they had argued a few weeks ago. Enrique told Long that he will wait for a few weeks to discuss the issue with his wife. Long also observed a red line around Enrique's neck and asked him about it. Enrique claimed that he was injured while working out. He stated that he fell back and that his necklace rubbed his neck raw. Enrique then showed Long his necklace. Enrique denied any suicidal, homicidal, or self-injurious thoughts three different times during his visit with Long. Enrique had also denied suicidal thoughts or self-harm thoughts to the nurse. Long reported that Enrique's thought process was organized and his thought content was within normal limits. (*Id.*) Long stated that Enrique was to return to his unit and was not placed on suicide watch. (*Id.*)

Correctional staff conducted routine security checks in the morning. Enrique ate his breakfast and was observed at 7:30 a.m. working out in his cell. (Doc. 38-1 at 2.) At 8:05 a.m., a corrections officer discovered that Enrique had hung himself. The officer called for medical assistance and Enrique could not be revived. (*Id.*) Staff notified Long of Enrique's death.

---

[1] This term is not defined in the record or by the parties but it is an apparent reference to a slot in a cell door to pass food through.

Plaintiff filed this action against Crow and Carpenter alleging that they violated Enrique's constitutional rights by being deliberately indifferent to his serious medical needs. Plaintiff also brought claims under Oklahoma law. Defendants moved for dismissal of Plaintiff's complaint. (Doc. 14.) Judge Ronald White granted the motion in part and dismissed the state law claims and the § 1983 claims against Defendants in their official capacity.[2] (Doc. 26.) Defendants now move for summary judgment on the basis that they are entitled to qualify immunity. (Doc. 37.) Although Plaintiff filed a brief in response, Plaintiff did not dispute Defendants' statement of facts. (Doc. 45.) Plaintiff argues that Defendants are not entitled to qualified immunity.

## II.     Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

---

[2] This case was recently assigned to the undersigned judge. (Doc. 50.)

**III.  Analysis**

Defendants argue that Plaintiff cannot establish that they violated Enrique's Eighth Amendment rights and that their alleged conduct violated clearly established law.

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified immunity "shields public officials … from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). "If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460. For a right to be clearly established, the contours of that right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "It is not enough that the rule is suggested by then-existing precedent." *Dist. of Columbia v. Wesby,* 138 S. Ct. 577, 590 (2018). To be clearly established, the rule at issue "must be 'settled law'" dictated by controlling authority or a "robust 'consensus of cases of persuasive authority.'" *Id.* at 589-90 (citations omitted).

Here, the alleged constitutional violation is under the Eighth Amendment which prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII.[3] Prison officials are

---

[3] The Eighth Amendment is made applicable to the States by the Fourteenth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 101-02 (1976) (citation omitted).

5

required to "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). This standard is violated by prison officials when they are deliberately indifferent to an inmate's serious medical needs. *George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Comm's*, 32 F.4th 1246, 1255 (10th Cir. 2022). Courts analyze claims involving a prison suicide as a failure to provide medical care. *Id.*

Notably, both Defendants are supervisors. Supervisors are not vicariously liable for their employees' acts. *Id.* A supervisor may be liable when he creates, promulgates, or implements a policy that injures a plaintiff's constitutional rights. *Id.* To attach liability to a supervisor, Plaintiff must "show an 'affirmative link' between the supervisor and the constitutional violation." *Id.* (quoting *Est. of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)). To show the "affirmative link" between a supervisor and the alleged constitutional injury, Plaintiff must prove: "(1) the defendant promulgated, created, implemented, or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199–200 (10th Cir. 2010)).

With respect to the state of mind element, "prison officials are deliberately indifferent if they fail to take reasonable steps to protect a pre-trial detainee or an inmate from suicide when they have subjective knowledge that person is a substantial suicide risk." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1307 (10th Cir. 2021) (citation omitted). A supervisor defendant must have "actual knowledge ... of an individual inmate's substantial risk of suicide." *George,* 32 F.4th at 1256 (quoting *Cox v. Glanz*, 800 F.3d 1231, 1249 (10th Cir. 2015)). Thus to hold one or both

Defendants liable as supervisors, Plaintiff must show that they each had actual knowledge of Enrique's substantial risk of suicide. *Id.* (reaffirming its decision in *Cox* and explicitly holding that a generalized risk of suicide is not sufficient to show supervisor liability). That knowledge could have come from a subordinate even if a supervisory defendant "had no personal interaction with [the prisoner] or direct and contemporaneous knowledge of his treatment." *Id.*

Defendants initially argue that the undisputed facts do not show that Enrique posed a substantial risk of suicide on November 28. The court need not determine whether there is a fact issue on that question, however, given the lack of evidence regarding knowledge. Plaintiff has pointed to no evidence showing that Crow and/or Carpenter had actual knowledge of Enrique's substantial risk of suicide. Although Long had knowledge of the events at issue, there is no evidence that Long or any other OSP employee relayed this information to Crow and/or Carpenter. Notably, Plaintiff does not even attempt to argue that Crow and/or Carpenter had actual knowledge. Rather, Plaintiff asserts that she does not need to show that Defendants had knowledge of a substantial risk to a particular inmate citing to *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) and *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) and asserts that she can rely on a generalized risk. (Doc. 45 at 7-8.) Notably, in *George*, the Tenth Circuit distinguished these cases and again rejected that application in the context of prison suicides:

> Plaintiff is correct that *Farmer v. Brennan*, 511 U.S. 825, [] "opened the door to a showing that a supervisory jail official could have the requisite mens rea if he knew of the generalized risks presented by conditions at his jail, not merely the risk to a specific detainee." Indeed, *Farmer* states, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." But *Farmer* concerned deliberate indifference to an inmate's safety who "would be particularly vulnerable to sexual attack," and we have applied its deliberate-indifference-to-a-generalized-risk requirement in cases involving the risk of sexual assault. *See, e.g., Tafoya v. Salazar*, 516 F.3d 912, 915–16 (10th Cir. 2008) (stating "[t]he official's knowledge of the risk need not be knowledge of a substantial risk to a particular inmate" in a

> prison-sexual-assault case). But in *Cox*, we determined that supervisory-liability in the inmate-suicide context requires the prison official to have had actual knowledge of an individual inmate's substantial risk of suicide. 800 F.3d at 1249. We acknowledged that "we have taken a different stance on the knowledge of risk that must be alleged" in the prison-sexual-assault context. *Id.* at 1251 n.11. But we found those cases distinguishable because one can assess the risk of sexual assault from the sexual victimizer's characteristics and other external factors, while "a substantial risk of suicide may be impossible to discern unless the particular inmate reveals indicia of that risk to prison officials." *Id.*

*George*, 32 F.4th at 1256–57 (internal citations omitted).

Given this recent authority affirming Tenth Circuit authority heavily relied on by Defendants, it is clear that Plaintiff must show that Defendants had actual knowledge of Enrique's substantial risk of suicide in order to prevail on her claims. *Id.* Plaintiff has not done so. Therefore, Defendants are entitled to summary judgment.

Even if § 1983 prison-suicide supervisory-liability claims only required Defendants to have known of a generalized risk of suicide at the prison, the evidence does not show that Crow and/or Carpenter had any knowledge of a generalized risk. Rather, Plaintiff argues that Defendants "knew or should have known of the substantial risk created by the system of substandard care." (Doc. 45 at 7.) This is not sufficient. Plaintiff's argument lacks any facts and is entirely conclusory. Moreover, Plaintiff fails to identify any evidence that there was a system of substandard care that resulted in a generalized risk to suicidal inmates and fails to identify the unconstitutional policy. Rather, Plaintiff's arguments regarding policies at the prison are entirely conclusory. (*Id.* at 6.)

Plaintiff further argues that Long failed to comply with the official policy by not placing Enrique on suicide watch. (*Id.* at 3, 5.) Plaintiff does not expand on this argument or explain how Long's actions violated policy. Nevertheless, Long's alleged failure to comply with prison policy on one occasion does not show that these Defendants' knew of a generalized risk to suicidal detainees or to Enrique. *See George*, 32 F.4th at 1257.

Because there is no evidence that Defendants knew that Enrique presented a substantial risk of suicide, Defendants are entitled to summary judgment.

## IV. Conclusion

Defendants' motion for summary judgment (Doc. 37) is GRANTED.

IT IS SO ORDERED. Dated this 11th day of August 2022.

>  __s/ John Broomes _____
> JOHN W. BROOMES
> UNITED STATES DISTRICT JUDGE